934 F.2d 320
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Stephen STALNAKER, Plaintiff-Appellant,
and
Susan Bennett, Plaintiff,
v.
The CITY OF CHARLESTON, WEST VIRGINIA, A Municipal
Corporation, Lola Francis Hart, William Hart and Thomas B.
Chabot, Jr., Individually and As Police Officers of the City
of Charleston, West Virginia, Defendants-Appellees.
 No. 90-2705.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1991.
Decided May 29, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-89-71-2)
 Michael DelGuidice, Lewis, Ciccarello & Friedberg, Charleston, W.Va., (Argued), for appellant; G. Nicholas Casey, Lewis, Ciccarello & Friedberg, Charleston, W.Va., on brief.
 William Randolph Fife, Steptoe & Johnson, Charleston, W.Va., for appellees.
 S.D.W.Va.
 AFFIRMED.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 In this civil rights action brought by Steven Stalnaker against the City of Charleston, West Virginia and several of its police officers pursuant to 42 U.S.C. Secs. 1983 and 1985 Stalnaker appeals from an adverse jury verdict assigning as error two evidentiary rulings of the district court and its refusal to grant him a new trial. We find no error in the court's rulings and affirm the judgment based on the verdict.
 
 
 2
 On the evening of February 27, 1987 Stalnaker, his college roommate, David Perrera, and their two girlfriends, Susan Bennett and Tracy Bostic, had been drinking beer in a Charleston tavern. Shortly thereafter they became involved in a disturbance on the sidewalk outside the tavern at which time the defendant, Lola Francis Hart, a policewoman, appeared on the scene. Within a few moments she was joined by two other police officers, William Hart and Thomas B. Chabot, Jr. What happened thereafter is sharply disputed by the parties, but Stalnaker maintains that Officer William Hart struck him with his night stick, grabbed him by his coat, threw him across the patrol car and then to the pavement, put his knee in Stalnaker's back, grabbed his hair and "started rubbing his face into the concrete." Stalnaker says that he was then arrested for obstructing an officer, resisting arrest and destruction of property. He alleges that he was taken to the city jail where he was held for four or five hours until his father arrived and posted bail for him.
 
 
 3
 As a result of his alleged mistreatment at the hands of the officers Stalnaker alleges that he had a black eye, cuts on his face, cuts and abrasions on his back and bruised ribs. He refused paramedic treatment at the jail but says that he was treated at a hospital the next day for a sprain, fracture and severe bruises for which an antibiotic and painkiller were prescribed. He alleges that following consultation with his attorneys about two years after the incident in question he incurred additional medical expenses in consulting with two psychiatrists one of whom diagnosed him "in one visit as suffering from post-traumatic stress syndrome."
 
 
 4
 Also charged with resisting arrest on the occasion in question was Stalnaker's girlfriend, Susan Bennett. When the charges came on for trial in the Kanawha County Circuit Court Stalnaker was acquitted, but Bennett was found guilty. She did not appeal, but instituted her own civil rights action against the present defendants based on the events of the evening of February 27, 1987. The two actions were consolidated for trial, and Bennett has not appealed the adverse jury verdict in her case.
 
 
 5
 In Stalnaker's first assignment of error he contends that the district court erred in refusing to allow him to introduce evidence of his acquittal on the criminal charges for which he had been arrested. In our view this evidence was clearly inadmissible, and the district court correctly so ruled in response to defendants' motion in limine prior to the trial. To begin with, only relevant evidence is admissible. Fed.R.Evid. 402. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The key question at the trial of this action was whether the police officers acted in an objectively reasonable manner at the time of Stalnaker's arrest. See Graham v. Connor, 490 U.S. 386 (1989). His acquittal was in no way probative of this issue.
 
 
 6
 Equally supportive of the district court's ruling is the general rule that evidence of an acquittal is not admissible in a civil action that involves the same or similar circumstances as those involved in the underlying criminal case. Rabon v. Great Southwest Fire Ins. Co., 818 F.2d 306 (4th Cir.1987); McSweeney v. Utica Fire Ins. Co. of Oneida County, New York, 224 F.2d 327 (4th Cir.1955); Royal Exchange Assurance v. Fraylon, 228 F.2d 351 (4th Cir.1955). See also United States v. Kerley, 643 F.2d 299 (5th Cir.1981); United States v. Viserto, 596 F.2d 531 (2d Cir.), cert. denied, 444 U.S. 841 (1979). A conviction can be considered as a judicial determination of guilt, but acquittal merely reflects the inability of the prosecution to meet the requisite burden of proof. The danger that a jury could accept the acquittal as determinative of the issues of civil liability outweights any potential probative value. See Rabon, supra.
 
 
 7
 Stalnaker's second contention on appeal is that the trial court erred by refusing to allow him to call certain rebuttal witnesses. One of the defendants, William Hart, had testified that Stalnaker's co-plaintiff, Susan Bennett, had cursed him on the occasion in question and that he would never use that kind of language himself in a public situation or against law enforcement officers. Thereupon Hart was asked if he had not in fact cursed certain of his fellow police officers in a parking lot located adjacent to the Charleston police station during an incident that occurred on June 19, 1983. Hart responded that he had no recollection of that event. This occurred near the end of the trial day on a Friday, and counsel for Stalnaker thereupon requested the court's permission to subpoena and call as witnesses upon the resumption of the trial the following week four of Hart's fellow police officers to rebut this testimony. The district court denied this request.
 
 
 8
 Considerations of relevancy aside, the rejection of this proposed rebuttal evidence was clearly within the discretion of the district court, and we unhesitatingly conclude that there was no abuse of discretion in this instance.
 
 
 9
 Stalnaker's final contention is that the district court erred in denying his motion for a new trial. He contends that the verdict was against the clear weight of the evidence, but as previously stated, the evidence was in fact sharply conflicting and was sufficient to support a verdict in favor of either party. As it was entitled to do, the jury chose to find for the defendants, and the court did not abuse its discretion in denying the motion for a new trial.
 
 The judgment of the district court is
 
 10
 AFFIRMED.